JUNE TERM, 1862. 229

Davenport Gas Light and Coke Company v. The City of Davenport.

DAVENPORT GAS LIGHT AND COKE COMPANY v. THE CITY OF DAVENPORT.

1. JUROR: INTEREST: CHALLENGE. In the formation of a jury the challenges should alternate between the parties, the plaintiff having the first challenge. Revision of 1860, § 3036.

2. SAME: INTEREST. Where in an action against a city a juror stated that he was a taxpayer and resident of the city, but that he had no opinion as to the case which would prevent his rendering a verdict according to the law and the evidence, it was held that the court did not err in sustaining a challenge for cause. Revision of 1860, § 3039.

3. PLEADING OVER. A further answer upon which issue was joined and trial had, which presented the same defense set out in the counts of the original answer, to which a demurrer was sustained, operates as a waiver of any error in the ruling of the court sustaining the demurrer.

4. CONSTITUTION: CONSTRUCTION: MUNICIPAL INDEBTEDNESS. Article 11, § 3, of the Constitution of 1857, does not affect the validity of contracts entered into by municipal corporations before that instrument took effect.

5. NUISANCE: DEFENSE. A municipal corporation can not appropriate to its own use gas furnished by a company, and avoid payment therefor on the ground that the works at which it is manufactured are a nuisance, when such works have never been, in the proper manner, declared a nuisance.

6. CONTRACT. The inability of a municipal corporation to pay an indebtedness incurred under a contract made by competent authority, cannot defeat an action thereon; neither can the corporation annul such a contract by notifying the other party that it cannot and will not pay the indebtedness which will be incurred by its execution.

7. EVIDENCE: BILLS. In an action by a gas light company against a municipal corporation for the value of gas furnished under a contract for two months named, it was held, that the bills for gas furnished during the months immediately preceding under the same contract, approved by the council of the corporation, were admissible for the purpose of showing, *first*, the number of lamps lighted, and *second*, that the city recognized the validity of the contract under which it was furnished, and its liability to pay for the same

8. BILL OF EXCEPTIONS. A general exception to the giving of each of "the instructions embraced in the charge of the court" when the charge involves several propositions of law, any one of which is not erroneous, presents no question for review on appeal. The same rule applies to a general exception by one party to the giving of instructions asked by the other; but when instructions are asked and refused, and such refusal is noted on the margin of each instruction, a general exception presents a

question for review upon each instruction so refused. *Eyser* v. *Weisgerber*, 2 Iowa, 463 ; cited and explained.

9. CONTRACT: PUBLIC POSTS. The phrase "public posts" in a contract for the lighting of a city with gas, includes posts erected and used for the benefit of the public, and is not restricted to those *owned* by the city.

*Appeal from Scott District Court.*

MONDAY, JUNE 2.

THIS action was brought on the 22d September, 1858, upon a special contract to recover for gas ·furnished one hundred and eighty-six lamp posts in the streets of the city during the months of July and August of that year. The contract was dated, August 6, 1857 ; and by its terms plaintiffs were to supply the public lamp posts, erected and to be erected, for a specified sum per month, for the whole unexpired term of the charter. The amount claimed was $1,278.95, the recovery $986 ; and from the judgment defendant appeals.

*James T. Lane* and *James Grant*, for the appellant, cited *Eyser* v. *Weissgerber*, 2 Iowa, 481; 3 Kent, 563 ; *Irwin* v. *Dixon*, 10 How., 34 ; *The State* v *Carver*, 5 Strob., 217 ; *Brown* v. *Graham*, 24 Ill., 628 ; *Boyle* v. *Levings*, 24 Ill., 223 ; *Peoria* v. *Hughes*, Id., 231.

*Charles E. Putnam* and *John N. Rogers* for the appellee, cited : 1. As to the waiver of error by pleading over, *Duncan* v. *Hobart et al.*, 8 Iowa, 337 ; *Taylor* v. *Galland*, 3 G. Greene, 17 ; *Gillis* v. *Matthews*, 4 Id., 254 ; *Ford* v. *Jefferson County*, 4 Id., 273 ; *Angus* v. *Campbell*, 3 Iowa, 582 ; *Plummer* v. *Rhoads*, 4 Id., 587. 2. As to the ruling of the court upon the challenge for cause, *Wood* v. *Stoddard*, 2 John., 194 ; *Russell* v. *Hamilton*, 2 Scam., 56 ; *Peck* v. *The Freeholders of Essex*, 1 Zab., 656 ; *Eberle* v. *The Board of St. Louis*, 11 Mo., 427 ; *The Mayor, &c.*, v. *Goetchuos*, 7 Geo.,

139; *The State* v. *Williams*, 30 Mo., 184; *Hawks* v. *The Inhabitants of Kennebeck*, 7 Mass., 461; *Tatum* v. *Young*, 1 Port. (Ala)., 298; *The State* v. *Arther*, 2 Dev., 217; *The United States* v. *Cornell*, 2 Mason, 91. 3. As to the sufficiency of a general exception to the instruction of the court. *Oliver* v. *Phelps*, 1 Zab., 597; *Haggart* v. *Morgan*, 1 Seld., 422; *Jones* v. *Osgood*, 2 Id., 233; *Hunt* v. *Maybee*, 3 Id., 266; *Hunt* v. *The Rensselaer and Saratoga Railroad Company*, 4 Id., 37; *Caldwell* v. *Murphy*, 1 Kern., 416; *Decker* v. *Matthews*, 2 Id., 313. 4. As to the construction of the words "public posts." *Beekman* v. *The Saratoga and Schenectady Railroad Company*, 3 Paige, 45; *Bloodgood* v. *The M. & H. R. R. Co.*, 18 Wend., 9; *Buffalo and New York Railroad Company* v. *Brainard*, 5 Seld., 100; *City of Cincinnati* v. *White's Lessees*, 6 Pet., 431; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407.

WRIGHT, J.—Appellant assigns thirteen distinct grounds of error, for the reversal of this judgment. So far as they are insisted upon in argument, we proceed to notice them.

I. A juror stated, "that he was a taxpayer in the city, lived in the sixth ward, did not believe it was right for the inhabitants of that ward to pay their share of the taxes, and get no gas, but had no opinion as to this cause which would disqualify him from rendering a verdict according to the law and evidences." On this statement, plaintiff challenged for cause, and the challenge was sustained. Under clause 2, § 3039 of the Revision, if the court, in the exercise of a sound discretion, is brought to the conclusion that the juror will not act with entire impartiality, the challenge should be sustained. There was no abuse of this discretion in this case, and the ruling is therefore affirmed. The court might well conclude that the juror would not act with entire impartiality, and hence that there was actual bias.

II. In the formation of the trial jury, defendant insisted that plaintiffs should first exhaust all their peremptory challenges. The court, however, required the parties to alternate, the plaintiff first and defendant afterwards, until both had completed their challenges. This was correct, certainly, under the Code of 1851, § 1774, in force when this action was commenced. The corresponding section in the Rev. (3036,) changes the phraseology somewhat, but we think the meaning is the same. The words "in term," would be entirely superfluous, under any other construction.

III. Certain pleas of the defendant were demurred to, the demurrer sustained, and this is the next matter challenging our attention. These pleas are numbered 2, 3, 4, 5, 7, 9, 10 and 11. Some of these were in the nature of denials of plaintiff's petition, or parts thereof, and so far as there was any error in holding them defective, defendant waived the same by his "further answer" afterwards filed, which covers the same ground, — upon which there was an issue and trial. This remark applies to the third and fourth pleas certainly. Whether it does to others, we need not determine, as we are clear that as to them the demurrer was properly sustained. And we prefer to take this view of the case, from the fact that questions are raised which it is important should be settled, for the guidance of the parties in future.

The second plea sets up that on the 5th September, 1857, the time of the adoption of the present Constitution, the city was indebted to an amount in the aggregate exceeding five per centum on the state and county valuation of the previous year; that no public lamp posts were then erected, and that it was not competent for the city after that date to become further indebted for any purpose; and that said plaintiffs, for gas furnished thereafter, could not recover.

The language of the Constitution (Art xi, § 3) is: "No county or other political or municipal corporation shall be

allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate, exceeding five per centum on the value of the taxable property, within such county or corporation, to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness." We are to inquire, first, whether this prohibition is applicable to the contract now under consideration. We think most clearly not. It was made on the 6th of August, 1857, and the Constitution was not in force until in September. The contract created the liability. It was by this, and at its date, that the indebtedness was incurred, within the meaning of the Constitution, and the subsequent prohibition could not interfere with the rights or obligations of the parties to it. It is as if the city had contracted for the erection of a market house, a public hall, for the building of a bridge, culvert, or the like, agreeing to pay a certain sum when the work should be completed. If the contract was made prior and the work done subsequent to the 5th September, 1857, the Constitution could not change or affect the same.

The seventh plea is, that the Gas works, where plaintiffs manufacture the gas furnished and sued for, were, at the time referred to in the petition, and continue to be, a nuisance; that the city under its charter has authority to prohibit but not to legalize a nuisance, and that a contract made for gas furnished at such a place is not binding.

If the Gas works referred to constituted a nuisance, then it was the right and duty of the city to so declare. But until this is done, and the fact found, we are not aware of any rule which would permit the city to appropriate to its own use the gas furnished, receive the benefit thereof, and then refuse to pay for it upon the ground that the place where the same was manufactured, was a nuisance. No individual consumer could certainly set up such a defense, nor can the city.

The eleventh plea is, that by the acts incorporating said city, the corporation is not authorized to levy a tax of over five mills on the dollar in any one year, unless the question of levying the same is first submitted to the legal voters; that prior to the 1st of July, 1858, all the taxes levied for that year had been appropriated; and that there was no mode by which a specific tax could be raised for lighting the streets, except by petition to do so; that no such petition had been presented; that plaintiffs were notified of these facts prior to the 1st of July, 1858; after which time the city was not liable.

We cannot see why the city should be released from its liability to fulfill this agreement, because it could not pay in the year 1858. Not only so, but if five mills on the dollar would not pay this with other debts, (if this amount was levied, even, which is not averred,) then the question of raising more could have been submitted to the legal voters, as pointed out in this plea. Nor could the fact that the property holders to be benefited had failed to petition for the levy of a specific tax, release the city. If there is no property of the city from which the debt can be made, then the question of the authority of the city council to raise the means to liquidate this debt by taxation or otherwise, might and would become material. But if the contract was binding upon the city, and this is not denied, so far as the authority to execute it is concerned, then the ability to finally pay the indebtedness incurred and arising thereunder, cannot defeat this action.

Appellant's counsel do not insist upon the pleas numbered 5, 9 and 10, and we need not, therefore, notice them.

IV. On the trial, plaintiffs offered in evidence certain bills for gas for the months of December, 1857, January, February, March, April, May and June, 1858, the same having been presented to and allowed by the city council, and paid. These bills were for gas furnished lamps or

posts in the streets of the city, being the same posts for the lighting of which in July and August this suit is brought. This evidence was objected to. 1. Because such payment does not imply a liability to pay a future bill, and especially where the gas was furnished after notice of refusal to pay as admitted by plaintiff. 2. Because it is not competent to thus prove that the lamps thus lighted were on public posts.

We have no hesitation in saying that this testimony was most clearly admissible. Whether it was competent to thus prove the matters referred to in the second objection we do not now discuss, as that will more properly come under review, when we come to consider the instructions. But to show the number of posts lighted, (and this was a question of fact controverted by the parties,) and that the city had recognized its liability to pay the debt now sued on, the testimony was very pertinent. It is not true, as stated, that such payment does not imply a liability to pay a future bill. If one party has undertaken to do a particular thing from month to month, and as often as required performs the contract, the opposite party has from such acts good right to presume that as long as he performs on his part, the party undertaking will continue to comply. Thus if A agrees to furnish B one horse each month for one year, and B pays for the same from time to time as the bills are presented, A. has certainly a right to presume, (aside from the binding effect of the contract,) when he delivers another horse, that the bill will be in like manner paid. But it is said there was notice that the bills would not be paid, and as this is much relied upon by defendant, we here notice it.

It seems to us that the entire meaning and effect of this notice is misapprehended. If the lamps lighted were upon public posts, then the city could not repudiate this contract upon the assumption that no tax could be levied to pay

the liability thereby incurred, without being petitioned therefor by the owners of more than half the property so to be taxed. And this is all there is of this notice. The resolutions passed by the city council, of which the Gas Company had notice, were of date June 11, 1858, as follows: "*First.* That from and after the first day of next July, the city will pay for no more gas until property-owners petition therefor, under the provisions of the charter. *Second.* That notice be and is hereby given to the Davenport Gas Light and Coke Company; that from and after the 30th of June, instant, we shall not use gas in the public lamps; and that the superintendent, or whoever has the matter in charge, be directed from and after that date to see that no gas lamps are lighted, as the same will not be done by order or consent of the city." But such resolves could not revoke the contract made with the Gas Company any more than they could compel the furnishing of gas in a manner and for prices different from those fixed by its terms. If there was a liability to pay these bills, the liability continued, notwithstanding this action of the city council, and notice thereof to the company. Not only so, but as applied to the admission of these bills, the rule applies, that individuals are held to "a careful adherence to truth in their dealings with each other," and one party cannot by his "representations or silence involve another in onerous engagements, and then defeat the calculations and claims his own conduct has superinduced." (23 How., 381.)

V. We next come to the examinations of the instructions given and refused, of which appellants complain. In doing so, we shall not undertake to quote and give our views upon each, but shall state generally the law, as applicable to the case. Before doing this, a matter somewhat preliminary, merits attention.

From the bill of exceptions, it appears that, of the fifteen instructions asked by defendant, eleven "were refused, to

Davenport Gas Light and Coke Company v. The City of Davenport.

which defendant excepted." The charge of the court covers ten pages, and at the conclusion thereof it is stated " to the giving of each of which instructions the defendant excepted."

It is now insisted that under the Revision of 1860, this method of excepting presents no question for our review, if any one of the instructions asked were properly refused, and, as applied to the charge of the court, if any part of it was correct. Our construction of the statute (§§ 3051 to 3061,) is, that appellant's position is correct as to the "charge" of the court, but not as to the instructions refused.. These are in distinct paragraphs, and marked in the margin "refused." They each enunciate some rule or rules of law, which defendant claims were applicable, and should have been given. If any one was improperly refused, therefore, there was a ruling upon the law or proposition as there stated, and as that particular proposition was called to the attention of the court, and insisted upon by the party asking it as the law governing the case, there is no chance for surprise, nor any fair ground for claiming that the mind of the judge was not called to what it was that counsel would have him hold. Not only so, but the statute on this subject seems to recognize a distinction between instructions asked and refused, and the " charge " of the court. For, speaking of the latter, it declares that " every part or paragraph shall be deemed approved, unless excepted to before the retiring of the jury; if so excepted to, that fact and by whom excepted to, whether by plaintiff or defendant, shall be stated by the court on the margin, against such instruction, or part of the charge." As to the former, however, there is no such requirement. The necessity for this rule is well stated in *Jones* v. *Osgood*, 2 Seld., 233. " The rules on this subject," says JOHNSON, J., " are tending rather to increased strictness, and not at all to relaxation. They have their foundation in a just regard

to the fair administration of justice, which requires that when an error is supposed to have been committed, there should be an opportunity to correct it at once, before it has had any consequences; and does not permit "the party to lie by without making his objection, and take the chances of success on the grounds on which the judge has placed the cause, and then, if he fails to succeed, avail himself of an objection, which, if it had been stated, might have been removed." And the rule here held applicable to the "charge" of the court, applies to instructions asked and given, to which the other party objects. A general exception, if any instruction is good, will present no question for review in this court.

It is proper to state that the case of *Eyser* v. *Weissgerber*, 2 Iowa, 463, was decided under the old law, and followed what we regarded the then settled practice of the state. The Revision, in our opinion, however, has given the rule, a rule which accords with our views of justice and propriety, and as the question has been made now for the first time, and argued by able counsel, we have deemed it proper to settle it at once, though the conclusion arrived at after carefully examining the instructions, does not render its determination, in all its bearings and forms, strictly necessary.

As the appellant claims that there was error in refusing his instructions, we may properly examine them. And, in considering them, it is proper to premise, that the issue of fact mainly controverted, and to which most of the instructions have reference, was whether the posts, for the lighting of the lamps on which this suit is brought, were public, in such a sense as to render the city liable. It is claimed that they did not belong to the city, were not city property, that the city did not erect them, that they had not been dedicated to the public, for that there had been only a casual use for less than a year, and that the city

never had, by any order, ordinance or resolution, declared them public lamp posts. It was claimed by the plaintiffs, on the other hand, that to bring these lamps within the contract, it was not necessary that the ownership should be in the city, that though not owned by the city or public, they would still be "public lamps," if they were erected for the use and benefit of the public, as contradistinguished from private individuals, and were in fact so used, and that this was especially true, if they were erected under an agreement with the city, (or public,) were under its supervision, and have been recognized and treated as of this character.

The claim or view taken by plaintiffs was substantially sustained by the court, and, as a consequence, defendant's instructions were refused, and we think very properly. Were these posts "public" within the meaning of the contract, was the fact to be determined. To make them such, so far as to enable the plaintiffs to recover in this action, it was not necessary that they should belong to the city, any more than a building used for a public purpose, but rented from an individual, for the lighting of which by gas the city was sought to be made liable. If they were intended and understood by both parties to be "public," and were accepted and recognized as such by the city council, it was sufficient to entitle the plaintiffs to recover, though they might not, according to a technical, abstract definition, come within the meaning of "public lamp posts."

The notice of the 11th of June can legitimately have but little bearing upon this question, for the order to discontinue is not placed upon the ground that the posts are not "public," nor is such a thing pretended nor intimated. On the contrary, in the very resolutions providing for the notice, they are styled and recognized as "public posts."

VI. Without referring to the testimony in detail, we state that the verdict was clearly warranted, and that there

was, therefore, no error in overruling the motion for a new trial, and in arrest of judgment. Notwithstanding the confidence with which this point appears to be urged by counsel, we do not see how the jury could have determined otherwise, under the evidence submitted. So far from its being a case where the evidence was strongly against the verdict, or manifestly against it, as some of the cases express it, or a case where injustice has been done, the weight of the evidence decidedly preponderates in favor of the finding, and we cannot disturb it.

Affirmed.