# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1108
Filed February 11, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Duval Tremont Walker Jr.,**
Defendant–Appellant.

———————————

Appeal from Iowa District Court for Linn County,
The Honorable Kevin McKeever, Judge.

———————————

**REVERSED AND REMANDED FOR A NEW TRIAL**

———————————

Kent A. Simmons (argued), Bettendorf, attorney for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino (argued),
Assistant Attorney General, attorneys for appellee.

———————————

Heard at oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.
Special concurrence by Sandy, J. Dissent by Badding, J.

1

**TABOR, Chief Judge.**

Before going to trial for murder and going armed with intent, Duval Walker Jr. moved in limine to exclude evidence of his "criminal history and any other charges stemming from this incident." The district court granted his motion, preventing jurors from learning that he had a prior felony conviction and that he had pleaded guilty to being a felon in possession of a firearm for conduct during this incident. But potential juror R.L. saw a news alert about Walker's guilty plea. When Walker moved to strike R.L. for cause, the district court refused, citing R.L.'s assertion that he had not formed an opinion that Walker was guilty of the other charges. And R.L. promised not to tell his fellow jurors what he had learned.

But because R.L. had information so prejudicial that it could not be offered as evidence or shared with other jurors, his exposure to the news account implanted actual bias. *See* Iowa R. Crim. P. 2.18(5)(o) (allowing challenges for cause "[w]here the circumstances indicate the juror would have an actual bias for or against a party"). Thus, the court abused its discretion by denying the motion to strike. Because Walker used a peremptory strike to remove R.L. and the court denied his request for an additional peremptory strike, we presume prejudice. The remedy is to reverse his convictions for murder and going armed with intent and to remand for a new trial.

## I.     Facts and Prior Proceedings

A St. Patrick's Day brawl at a Marion bar ended in the fatal shooting of Cameron Barnes. Security cameras inside the bar showed the fight started when Walker punched Barnes in the face. After that, "all hell broke loose," according to a witness. Bystanders jumped in, chairs were thrown, and pool

cues were broken. During the melee, a gun dropped on the ground. Walker picked the gun up, advanced towards Barnes, and shot him.

Walker was arrested two weeks later and charged with first-degree murder, felon in possession of a firearm, and going armed with intent. The case proceeded to a jury trial in March 2024. Before jury selection, Walker filed a written guilty plea to being a felon in possession. Because of that guilty plea—and Walker's stipulation that he "was engaged in illegal activity at the time of the shooting"—the district court granted Walker's motion in limine to exclude his criminal history.

At the start of jury selection, the prosecutor asked: "Has anyone seen or heard anything about this case prior to coming in here today?" Noting that "we have quite a few hands up," the prosecutor and defense counsel engaged in individual voir dire of those prospective jurors. Among those examined were M.W. and R.L. After learning about their exposure to news accounts, Walker moved to strike both prospective jurors for cause, which the district court denied. Walker used two of his peremptory strikes to eliminate them from the jury.

The jury found Walker guilty of first-degree murder and going armed. Walker appeals.

## II.    Analysis

In this appeal from those convictions, Walker contends the district court abused its discretion in failing to grant his for-cause challenges. He also claims the court erred in refusing to instruct the jury on the doctrine of imperfect self-defense. We need only address the challenges for cause. We review denials of challenges for cause for an abuse of discretion. *See State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017).

3

### A. Framework

To obtain a new trial, Walker must prove three elements. *See id.* at 583. He must show that (1) the district court erred in denying his challenge for cause, (2) the denial caused him to use a peremptory strike on that prospective juror, and (3) he requested a replacement strike that was refused. *Id.* "Where the defendant makes such a showing, prejudice will then be presumed." *Id.*

Walker followed this approach, using two of his peremptory strikes to remove potential jurors M.W. and R.L. who he unsuccessfully challenged for cause. Once he exhausted his strikes, Walker asked for two more and identified the jurors he would have removed if his challenges had been granted. The court denied that request, satisfying the second and third prongs of the *Jonas* presumed-prejudice approach. So we focus on the first prong: whether the court abused its discretion in denying Walker's challenges for cause.

Iowa Rule of Criminal Procedure 2.18(5) lists available challenges for cause. Although Walker did not specify at trial which grounds he was relying on, he cites paragraphs (k) and (o) on appeal. *See State v. Booker*, 989 N.W.2d 621, 632 (Iowa 2023) (noting that while rule 2.18(5) requires the challenging party to "distinctly specify" the grounds for cause, the parties "were well aware of why" the for-cause challenge was raised).

We now examine those two grounds. Paragraph (k) allows a party to object if a prospective juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Iowa R. Crim. P. 2.18(5). Under this paragraph, the district court should grant the

4

motion if "the juror holds such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) (citation omitted). Covering different territory, paragraph (o) applies "[w]here the circumstances indicate the juror would have an actual bias for or against a party." Iowa R. Crim. P. 2.18(5) (effective July 1, 2022).

Because paragraph (o) is a recent addition to the rules of criminal procedure, we take this chance to discuss its origin and language. In summarizing the 2022 changes to the rules of criminal procedure, the Iowa Judicial Branch criminal procedure task force noted that this added challenge for cause arose from the supreme court's decision in *Jonas*.[1] In that case, our supreme court found that the district court abused its discretion in refusing to disqualify a potential juror for cause under paragraph (k). 904 N.W.2d at 575. During jury selection, that potential juror said he "would try to keep an open mind" but "would have a hard time overlooking" the fact that Jonas was gay. *Id.* at 569. As the court found, the potential juror should have been struck based on his original expression of "actual bias" against gay people, despite his "generalized statements the potential juror could be fair." *Id.* at 571. Because paragraph (o) reflects this principle from *Jonas*, jurors' assurances that they can be fair judges of the evidence—despite circumstances indicating bias—are not dispositive on this ground for disqualification.

Finally, we note that rule 2.18(5)(o) does not define "actual bias." In deciding a post-trial claim of juror misconduct, our supreme court explained that jurors may be disqualified for either actual or implied bias. *State v.*

---

[1] *See Supreme Court Approves Revised Rules of Criminal Procedure*, Iowa Judicial Branch: News Releases (Feb. 1, 2022), https://perma.cc/W6ZF-5S5K

*Webster*, 865 N.W.2d 223, 236 (Iowa 2015). "Actual juror bias occurs when the evidence shows that a juror, in fact, is unable to lay aside prejudices and judge a case fairly on the merits." *Id.* "Implied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumes a juror would not be impartial." *Id.* Examples of implied bias can be found in paragraphs (d) through (j) of rule 2.18(5).

When determining whether potential jurors harbor actual bias, their statements may be relevant. *See Jonas*, 904 N.W.2d at 575. But potential jurors could maintain that they have no opinion which would disqualify them from rendering a verdict according to the law and evidence, yet they could still be struck for cause if the circumstances suggest that they would not be impartial. *See Davenport Gas Light & Coke Co. v. City of Davenport*, 13 Iowa 229, 231 (1862).

### B. Application to potential juror R.L.

With that framework in mind, we turn to Walker's motion to strike potential juror R.L. The prosecutor and defense counsel questioned him twice, separate from the other potential jurors. On the first day, he explained, "I just remember seeing in the headlines, you know, when it happened in the news." R.L. couldn't recall any details, aside from the fact that a shooting had occurred at a local bar. R.L. agreed that he could be fair and impartial and base his verdict "solely on the evidence" presented at trial. And he denied having formed an opinion as to Walker's guilt or innocence. R.L. was excused from the court's chambers and returned to the courtroom. But the next day, R.L. told the court that he had seen a new headline about Walker:

> R.L.: On one of the top headlines on Google News after we got done yesterday, there was a KCRG article in regards to the defendant pleading guilty to a charge. I didn't read the article. I just saw the headline because it popped up at the top of the story.

PROSECUTOR: And do you recall the specifics of what you read of the headline?

R.L.: It said he was a felon in possession of a weapon and pled guilty to it.

PROSECUTOR: Okay. Having read that headline, do you have an opinion as to whether or not Mr. Walker's guilty or not guilty of the charges that the State will be presenting?

R.L.: No. I mean, one can happen without the—one can be true without the other.

. . . .

PROSECUTOR: And do you think you would be able to form a verdict solely on the evidence in the courtroom and be able to set aside what you've previously read about this case?

R.L.: Yes.

PROSECUTOR: And do you think that at this point in time, you still would be fair and impartial to both the State and Mr. Walker?

R.L.: Yes.

. . . .

PROSECUTOR: Okay. So it—you wouldn't say, "I'm going to find him guilty because I know he was a felon in possession"?

R.L.: No, I wouldn't.

PROSECUTOR: And you're not going to let that sway your opinion as—in regards to the other charges?

R.L.: No. I don't believe—I mean, it all depends on what's presented in front of me, you know, but I'm—at this point in time, no.

PROSECUTOR: Would you tell the other jurors of the information that you heard, or would you not tell them about what you've heard—

R.L.: I wouldn't say anything.

Defense counsel challenged R.L. for cause based on his knowledge that Walker pleaded guilty to being a felon in possession of a firearm. Counsel argued that "as part of our motion in limine, the jurors are not to know that [Walker] has a prior conviction, prior bad acts, anything of the such, and now . . . [R.L.] know[s] that he is a felon." The district court denied the motion:

> Based on his answers, he seemed to be wanting to just evaluate this case based on what this case was about and not on what—anything that may have been pled to in the past.
>
> He didn't seem to think there was a relationship between the two, so I don't think that there was—I mean, based on his answers, there doesn't appear to be any of the kind of prejudice that I was hoping to avoid by excluding the evidence because we can't—you know, once the once this is presented to the jurors, we don't know whether it will or won't affect them.
>
> Here in jury selection, we have the benefit of asking them what people think. Some people come in here and tell us they've made up their minds and we've thrown them out. Other people told us they'll be open-minded and think about them, and we've kept them.
>
> So I think [R.L.] said he would be fair, and I have no reason to doubt that based on his own statements.

Walker contends the district court abused its discretion by "taking the risk of keeping a juror who admitted he had knowledge of facts the judge had already ruled should be excluded from the knowledge of jurors." He points to our supreme court's warning in *Jonas* "against allowing close issues to creep into the record and threaten the validity of a criminal trial." 904 N.W.2d at 575. As the court reiterated in *Jonas*,

> Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded.

*Id.* (quoting *State v. Teale*, 135 N.W. 408, 410 (Iowa 1912)); *accord State v. Beckwith*, 46 N.W.2d 20, 26 (Iowa 1951); *see also May v. Elam*, 27 Iowa 365, 368 (1869) ("It is not difficult, in general, to obtain jurors of whose impartiality there can be no doubt. If there is any fair doubt . . . concerning a person called into the jury box, it is better to let him stand aside and call another.").

Indeed, that warning is good advice for trial courts. What's more, the ruling here was not "technically right" under Rule 2.18(5)(o). Jurors may be disqualified even if they have not "*formed or expressed* an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Iowa R. Crim. P. 2.18(5)(k) (emphasis added); *see also Jonas*, 904 N.W.2d at 575 (finding abuse of discretion under paragraph (k) when juror expressed actual bias). Paragraph (o) requires the district court to decide whether "the *circumstances indicate* the juror would have an actual bias" against a party. Iowa R. Crim. P. 2.18(5)(o) (emphasis added).

Here, the court failed to consider whether, independent of R.L.'s assurances that he would not be swayed by his exposure to the damaging information and would keep it secret from other jurors, the circumstances justified denying the motion to strike. *See id.*; *see also Jonas*, 904 N.W.2d at 575 (citing *Dyer v. Calderon*, 151 F.3d 970, 984 (9th Cir. 1998), which determined that when a potential juror is prejudiced, the court must presume bias despite assertions to the contrary); *see also Neuendorf*, 509 N.W.2d at 747 (disqualifying juror after her exposure to news report that Neuendorf's codefendant was found guilty though juror said she would try to be fair).

Did the circumstances indicate actual bias here? During jury selection, a news account reached R.L. revealing that Walker was a felon and pleaded

guilty to being a felon in possession of a firearm for his conduct in this incident. The district court had excluded that same information from the jury because it posed too great a risk of unfair prejudice.[2] From that ruling on Walker's motion in limine, we may infer that "the nature of the improper information" was "sufficiently prejudicial to deny [Walker] a fair trial," given the charges yet to be tried and Walker's justification defense. *Cf. State v. Henning*, 545 N.W.2d 322, 325 (Iowa 1996) (finding juror misconduct sufficient to warrant a new trial).[3]

And under paragraph (o), R.L.'s assurances that he would not be swayed by his exposure to the damaging information and would keep it secret

---

[2] This situation differs from *State v. Winters*, where we held a juror's knowledge that the defendant "had previously been arrested for aggressive or violent things" was not enough to sustain a challenge for cause under Rule 2.18(5)(k). No. 19-2130, 2021 WL 610204, at *6–7 (Iowa Ct. App. Feb. 17, 2021). Because the juror in *Winters* "stated unequivocally he had not formed an opinion of the case," we found the court did not abuse its discretion in denying the challenge for cause. *Id.* at *7.

This situation also differs from *State v. Owens*, where our supreme court rejected a claim that trial counsel was ineffective for not moving to sever a charge of felon in possession from drug-related crimes. 635 N.W.2d 478, 482–83 (Iowa 2001). There, the court rejected Owens's request for a "*per se* rule compelling severance whenever the State charges a felon with being in possession of weapons along with other related charges." *Id.* at 482. But *Owens* acknowledged that deciding to consolidate a felon in possession charge could be an abuse of discretion depending on the jury's ability to compartmentalize the evidence offered to prove each consolidated charge. *Id.* (discussing *State v. Smith*, 576 N.W.2d 634, 637 (Iowa Ct. App. 1998), *overruled on other grounds by Owens*, 635 N.W.2d at 484).

[3] In *Henning*, jurors learned during a break in a trial for vehicular homicide that the defendant had prior convictions for operating while intoxicated. 545 N.W.2d at 324. Our supreme court granted Henning a new trial, finding the jurors had been exposed to information "of a type more likely than not to implant prejudice of an indelible nature upon the mind." *Id.* at 325.

from other jurors did not justify denying the motion to strike. *See Jonas*, 904 N.W.2d at 575; *see also Neuendorf*, 509 N.W.2d at 747.

We recognize that trial judges have broad discretion in ruling on motions to strike potential jurors who have been exposed to pretrial publicity about a case. *See State v. Simmons*, 454 N.W.2d 866, 868 (Iowa 1990). But "[g]eneralizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence." *Marshall v. United States*, 360 U.S. 310, 312 (1959) (presuming prejudice when jurors saw news accounts of defendant's prior felony convictions though they told the trial judge they would not be influenced by the articles).[4] "The prejudice to [Walker] is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence." *Id.*

Contrary to the district court's reasoning, the difference between the two sources of the information about Walker's guilty plea—the media or the prosecution—did not justify denying the motion to strike and allowing R.L. to sit with the damaging disclosure. To that end, it is telling that the district court and the prosecutor harbored concerns that R.L. might reveal the restricted information to the other jurors. But they ultimately took his word that he would not share the secret.

---

[4] Granted, the presumption of prejudice in *Marshall* is based in the federal courts' supervisory authority and not the Constitution; thus, state courts are not compelled to adopt that presumption. *See Britz v. Thieret*, 940 F.2d 226, 231 (7th Cir. 1991). But Iowa now has rule 2.18(5)(o), which requires trial courts to decide whether the objective circumstances indicate that the juror has an actual bias.

In finding an abuse of discretion, we do not mean to criticize the district court. As noted above, paragraph (o) is of recent vintage, and we have few, if any, cases interpreting the new ground for striking a potential juror. And as Walker notes on appeal, his motion to strike presented "a unique situation in these procedural and evidentiary circumstances." Unlike common cases where potential jurors may equivocate on their ability to set aside prejudicial information, R.L. was "unwavering in his confidence that he could be fair and impartial in the process of reaching a verdict." But that confidence did not prevent finding circumstances indicating the potential juror would have actual bias under paragraph (o), given the court's earlier ruling on the motion in limine.

Our conclusion is reinforced by the conditional nature of R.L.'s belief that his knowledge of Walker's guilty plea to being a felon in possession would not influence his decision to convict or acquit on the murder and going armed with intent charges. When asked if he would let the guilty plea "sway his opinion" on the other charges, R.L. replied: "I mean, it all depends on what's presented in front of me, you know, but I'm—at this point in time, no." The State contends that R.L. was just saying that he would rely on the evidence at trial. But the State's interpretation reads out the qualifications embedded in R.L.'s response.

In sum, because denying the motion to strike R.L. was an abuse of discretion, we reverse and remand for retrial.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

Sandy, J., specially concurs; Badding, J., dissents.

12

**SANDY, Judge** (specially concurring).

If a court must extract a promise from a prospective juror to not share objectively prejudicial information known only to him, the inquiry is already over. And when a juror can remain qualified only by promising not to speak about prejudicial facts uniquely within his knowledge, disqualification is not discretionary—it is mandatory. Voir dire exists to identify disqualifying bias—not to preserve hope that a juror can silently quarantine information the court itself has deemed too prejudicial for any juror to possess.

The district court not only relied on R.L.'s assurances of impartiality, but his promise to *contain* information the court had already deemed too prejudicial for any juror to possess. A fair trial should not ride on the hope that a single juror—however well intentioned—will both silently compartmentalize excluded facts and successfully suppress any disclosure of those facts while participating fully in collective deliberations. Jury deliberation is, by design, a communicative and collaborative process. *See State v. Campbell*, 294 N.W.2d 803, 812 (Iowa 1980). Expecting a juror to actively contribute to that process while simultaneously withholding highly salient information known only to him is not a safeguard against prejudice— it is a gamble. *See State v. Gesch,* 482 N.W.2d 99, 103 (Wis. 1992) ("Whether [a certain juror]'s presence in the jury room actually hindered [deliberations] we will never know, but what is important is the fact that it could have.").

Voir dire is designed to identify bias, not to manage it through promises of nondisclosure. *See State v. Webster*, 865 N.W.2d 223, 236–37 (Iowa 2015). Once a prospective juror possesses information that must be

excluded from the jury as a whole, the risk of prejudice is no longer speculative—it is structural.[5]

That risk was especially acute here. R.L. did not merely learn that Walker had a prior felony conviction. He learned that Walker had pleaded guilty to being a felon in possession of a firearm arising from the same incident—and that the firearm he admitted possessing was the very weapon the State alleged was used to commit the homicide.[6] This was not collateral or abstract criminal history. It went to the central factual narrative the jury was tasked with deciding: whether Walker unlawfully armed himself and intentionally shot the victim. *See State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) (determining a juror's knowledge of a prior guilty plea demonstrated that she would "begin the case with a prejudice that the defendant would have to overcome" and that such knowledge affected her impartiality.) Knowledge that Walker had already admitted criminal

---

[5] "Bias may be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant" to excuse the juror for cause, even if the juror gives good faith assurances of impartiality. *United States v. Torres*, 128 F.3d 38, 47 (2d Cir. 1997); *see also Murphy v. Florida*, 421 U.S. 794, 800 (1975) (holding a juror's representations concerning his or her ability to judge a case fairly and impartially are not dispositive).

[6] What's more, Self-Defense Instruction No. 48 placed squarely before the jury whether the defendant was engaged in illegal activity at the place where force was used. A juror who knew that the defendant had already pleaded guilty to being a felon in possession of a firearm arising from the same incident necessarily approached that inquiry with a settled factual premise that the defendant was unlawfully armed at the time of the encounter. That knowledge did not merely bear on credibility or character; it supplied an answer to a predicate element of the justification instruction itself. Because the jury as a whole was forbidden from considering that fact (by way of the limine ruling), allowing a single juror to retain it risked collapsing the justification analysis before deliberations began. No assurance of impartiality can neutralize prejudice that directly resolves an element the jury was instructed to decide.

responsibility for possessing the murder weapon carries an obvious and powerful prejudicial force, one the district court correctly ruled could not be presented as evidence. *See State v. Debruin*, No. 05-0833, 2006 WL 2419138, at *5 (Iowa Ct. App. Aug. 23, 2006) (holding jurors should not have access to extraneous information that has significant bearing on a defendant's defense and was specifically excluded from trial pursuant to a defendant's motion in limine).

In that context, the notion that the prejudice could be neutralized by a juror's promise "not to tell the other jurors" underestimates the nature of the harm. The concern is not only that the information might be shared, but that it cannot be unlearned. A juror who knows that the defendant admitted illegal possession of the weapon alleged to have caused the death enters deliberations with a fundamentally altered evidentiary lens—one that no instruction and no assurance of good faith can correct.[7] Iowa R. Crim.

---

[7] Self-assessments of one's own impartiality are often overly optimistic. *See Webster*, 865 N.W.2d at 250 (Hecht, J., concurring in part and dissenting in part) ("[J]urors often state they can be impartial simply because they believe the judge wants them to be."); Mary R. Rose & Shari Seidman Diamond, *Judging Bias: Juror Confidence and Judicial Rulings on Challenges for Cause*, 42 Law & Soc'y Rev. 513, 516 (2008) ("[P]eople often have difficulty producing accurate self-assessments of bias and find it difficult to estimate whether events or prior experiences are likely to influence them."); *see also* Shari Seidman Diamond, Leslie Ellis & Elisabeth Schmidt, *Realistic Responses to the Limitations of* Batson v. Kentucky, 7 Cornell J.L. & Pub. Pol'y 77, 92 (1997) [hereinafter *Limitations of* Batson]. Jurors often state they can be impartial simply because they believe the judge wants them to be. *See* Mark W. Bennett, Essay, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of* Batson, *and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010) ("As a [federal] district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answer that they think I want, and they almost uniformly answer that they can 'be fair.'"); *Limitations of* Batson, at 91 ("[J]urors may be hesitant to reveal opinions that they believe might engender disapproval from the judge or others.").

P. 2.18(5)(o) (A challenge for cause of an individual juror may be made if "circumstances indicate the juror would have an actual bias for or against a party."); *see also Webster*, 865 N.W.2d at 237 n.7 ("[A] jury consisting of eleven impartial jurors and one actually biased juror is constitutionally infirm without any showing that there was juror misconduct . . . ."); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) ("Regardless of what role [the potentially biased juror] played during jury deliberations, appellants were denied their constitutional right to an impartial jury by his presence on the panel.").

A fair trial does not depend on a juror's vow of silence. When a juror's continued service requires the suppression of information the law forbids the jury to hear, the error is not cured by confidence in good faith—it is confirmed by the risk itself.

**BADDING, Judge** (dissenting).

After learning from a Google News headline that Duval Walker Jr. had pleaded guilty to being a felon in possession of a firearm, potential juror R.L. unequivocally stated he could set that knowledge aside and render a verdict "solely on the evidence in the courtroom." Yet the majority opinion concludes that even though R.L. was "unwavering in his confidence that he could be fair and impartial," the circumstances indicated that he would have an actual bias against Walker as required to sustain a challenge for cause under Iowa Rule of Criminal Procedure 2.18(5)(o). I respectfully conclude otherwise.

\*\*\*

Rule 2.18(5)(o) is concerned with *actual* bias—and that is lacking here with Walker's challenge to R.L. Unlike the potential juror in *State v. Jonas*, 904 N.W.2d 566, 575 (Iowa 2017), who expressed actual bias against gay people in a pretrial questionnaire and during voir dire, R.L. simply reported that he had learned about Walker's guilty plea to a felon in possession charge. It was the expression of actual bias that concerned the court in *Jonas*, despite the juror's "later, generalized statements" of impartiality: "If a potential juror expresses actual bias, 'the law will not trust him' to be fair and impartial." 904 N.W.2d at 571–72 (citation omitted). I disagree with the majority's conclusion that—without an expression of actual bias—"potential jurors could maintain that they have no opinion which would disqualify them from rendering a verdict according to the law and evidence, yet they could still be struck for cause if the circumstances suggest that they would not be

17

impartial."[8]  That, in my mind, is implied bias—which is dealt with in other paragraphs of rule 2.18(5).

Beyond the lack of any expression of actual bias, the circumstances here did not indicate that R.L. would have such a bias.  Walker's argument on this point suggests that knowledge about a defendant's prior conviction means a prospective juror is presumptively biased or automatically incapable of rendering a fair verdict.  But our supreme court has rejected that proposition in other contexts.

In *State v. Simmons*, the court found that the defendant was not deprived of a fair trial when her motion for change of venue was denied.  454 N.W.2d 866, 867 (Iowa 1990).  The defendant's "principal contention [wa]s that prejudice against her arose from the publicity surrounding" her codefendant's conviction.  *Id.* at 868.  The court rejected that claim, reasoning that a "prior conviction does not by itself . . . create presumptive prejudice." *Id.* (collecting cases); *see also Murphy v. Florida*, 421 U.S. 794, 799 (1975) (rejecting the idea "that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process").  Similarly, in *State v. Owens*, the court disagreed with a defendant's claim

---

[8] The case cited for this proposition—*Davenport Gas Light & Coke Co. v. City of Davenport*, 13 Iowa 229, 231 (Iowa 1862)—also involved an expression of actual bias by a stricken juror in an action to recover for gas furnished to lamp posts.  The court sustained the challenge to the juror, who had stated during voir dire

> that he was a taxpayer in the city, lived in the sixth ward, did not believe it was right for the inhabitants of that ward to pay their share of the taxes, and get no gas, but had no opinion as to this cause which would disqualify him from rendering a verdict according to the law and evidences.

*Davenport Gas*, 13 Iowa at 231.

"that, by its very nature, a felon-in-possession charge puts the jury on notice of a defendant's status as a felon, thereby injecting unfairness into its deliberations." 635 N.W.2d 478, 482 (Iowa 2001). The court in *Owens* found no abuse of discretion in not severing that charge from the others at trial, noting the "specific felony was not identified, nor were facts concerning the crime detailed for the jury."[9] *Id.* at 483. As in *Owens*, R.L. did not know the specific felony Walker had been convicted of, nor any details about that crime. *See id.*

While the Iowa Supreme Court has not considered the issue in jury selection context, this court has. In *State v. Winters*, we held a juror's knowledge that the defendant "had previously been arrested for aggressive or violent things" was not enough to sustain a challenge for cause. No. 19-2130, 2021 WL 610204, at *6–7 (Iowa Ct. App. Feb. 17, 2021). We reasoned that the "juror's exposure to information potentially inadmissible by the rules of evidence at trial does not by itself prohibit him from serving as a juror." *Id.* at *7. Because the juror in *Winters* "stated unequivocally he

---

[9] The majority points out that in *State v. Henning*, our supreme court found that several jurors' knowledge of a defendant's past convictions was "sufficiently prejudicial to deny defendant a fair trial." 545 N.W.2d 322, 324 (Iowa 1996). But, unlike here, the defendant in *Henning* was on trial for the same charge as his past convictions—operating while intoxicated. *Id.* (noting the "information went beyond merely advising the jurors that defendant had been guilty of bad acts other than the one alleged in the present case" and instead "demonstrated that he was a habitual operator of a motor vehicle while under the influence," which "was a paramount issue in the case"). I disagree with the special concurrence's assertion that R.L.'s knowledge of Walker's guilty plea to felon in possession of a firearm "went to the central factual narrative the jury was tasked with deciding." It was clear from the video of the shooting that Walker possessed a firearm, and the parties stipulated that Walker "was engaged in illegal activity at the time of the shooting." In any event, it was R.L.'s knowledge of Walker's "felon" status that drew the motion to strike—and that fact had nothing to do with the elements of the offense at issue.

had not formed an opinion of the case," we found the court did not abuse its discretion in denying the challenge for cause. *Id.*; *see also State v. Webster*, 865 N.W.2d 223, 238 (Iowa 2015) (finding no juror misconduct where a juror was familiar with the victim's family but "emphatically emphasized that she was capable of, and did in fact, base her verdict solely on the evidence").

Walker argues that R.L. did not make such an unequivocal statement about whether his knowledge of the guilty plea would impact his assessment of the remaining charges. He points to R.L.'s response that "it all depends on what's presented in front of me, you know." In Walker's view, this was R.L. "say[ing] he could not be sure he would not use improper extra-judicial, media information in reaching a verdict." I disagree.

First, as the State argues, the "less strained reading" is that R.L. "was saying that his belief in Walker's guilt would depend on the evidence in front of him." That is precisely what the law expects of a juror. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

Second, Walker's interpretation ignores all the discussion that came before, during which R.L. repeated that Walker could be guilty of one offense but not the others. *See State v. Beckwith*, 46 N.W.2d 20, 25 (Iowa 1951) ("It is from the whole examination that the final conclusion must be reached. . . ."). Throughout his two voir dire sessions in the court's chambers, R.L. maintained that he could be fair and impartial, that he could decide the case on the facts presented at trial, and that he did not have an opinion about Walker's guilt or innocence. Contrast these statements with those in *State v. Neuendorf*, where a potential juror who knew that a

20

co-defendant had been found guilty expressed this opinion when asked if she could be impartial:

> I'm afraid I probably would find it difficult. I figure that a jury's found one of them guilty, probably the other is a co-partner and probably equally as guilty; but if I were forced into it, I would try to do it fairly; but I honestly think that [it] would be hard.
>
> . . . .
>
> I probably wouldn't want me on the case. I'd probably want someone who hadn't read the outcome of the prior trial.

509 N.W.2d 743, 745 (Iowa 1993). Only after being questioned by the court, did the juror state that she would "try" to judge the defendant only on what he did or did not do. *Id.*

As our supreme court observed close to fifty years ago—and is undoubtedly even more true today—in "these days of swift, widespread and diverse methods of communications," it is not required "that the jurors be totally ignorant of the facts and issues involved." *State v. Sallis*, 262 N.W.2d 240, 246 (Iowa 1978) (citation omitted). "Voir dire of prospective jurors should be trusted to expose any substantial prejudices among them." *State v. Walters*, 426 N.W.2d 136, 138 (Iowa 1988); *see also Webster*, 865 N.W.2d at 237 (noting the very purpose of voir dire is "to smoke out actual juror bias").

The voir dire process worked here. The district court struck other jurors who did not unequivocally state that they could be fair and impartial and kept ones who could—R.L. included. Because R.L. expressed no actual bias against Walker, and the circumstances did not indicate that he would have one, I would defer to the district court's "privileged position to observe 'the questions and answers live, while watching [R.L.'s] demeanor,'" and

21

affirm. *State v. Gills*, No. 22-1074, 2024 WL 3518061, at *5 (Iowa Ct. App. July 24, 2024) (citation omitted); *see also Skilling v. United States*, 561 U.S. 358, 386–87 (2010) ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality for . . . . the in-the-moment voir dire affords the trial court a more intimate and immediate basis for assessing a venire member's fitness for jury service.").

Because I would affirm the district court's denial of Walker's challenge for cause to R.L., I briefly address the two other issues that he raises on appeal.

***

Walker claims the district court should have sustained a challenge that he made to M.W., another potential juror who said that she had heard something about the case. M.W. could not recall specific details but was concerned "that when they start talking about the case, it would come back, because it was all over the news."

Defense counsel challenged M.W. for cause, arguing "our fear is that if [M.W.] starts to remember something, that she could remember something that is not brought in on these facts in question, and therefore, she may make a decision based on that." Before ruling, the district court noted:

> I don't think anyone has explained yet that one of the requirements of her is that if she's selected as a juror, she has to agree to decide the evidence in the courtroom versus the evidence—or any other information. I haven't heard anyone ask that specific question yet. If you wanted to ask that question, then I'll consider the motion.
>
> DEFENSE COUNSEL: [M.W.], would you be able to form your opinion based on only the evidence you hear in this courtroom and separate what you heard outside of the courtroom?
>
> M.W.: I would think so. I would think so.

22

Counsel renewed the challenge to M.W. because "she's saying she thinks so, not that she definitely would be able to do that." The court denied the challenge, reasoning:

> When asked directly whether she would abide by the rules, she said that she thinks that she would be able to do that, and that's all I can—we can ask for people is to give us their best estimate as to what they'll be able to do if they're faced with that choice, and she thinks she can follow the rules.

Walker claims the district court improperly posed a "magic question" that embedded the correct answer, violating our supreme court's warning in *Jonas* about juror rehabilitation. But that's not what the district court did here. Walker is correct that in *Jonas*, the court recognized that in "actual-bias cases, a later affirmative response to a 'magic question' using the words fair and impartial is not enough to rehabilitate the potential juror." 904 N.W.2d at 572. But unlike *Jonas*, M.W. did not express any actual bias against Walker. *See id.* at 575.

Walker also likens M.W. to the prospective juror in *Neuendorf*, arguing that M.W. "could not promise she would be fair and impartial." But unlike the juror in *Neuendorf*, M.W. did not express any opinion on Walker's guilt, unequivocally answering "No" when asked whether she had formed one before trial. 509 N.W.2d at 746 (concluding a challenge for cause should have been sustained when the juror stated that the defendant "probably [was] equally as guilty" as his codefendant). And impartiality does not require absolute certainty, as Walker seems to argue. *See Simmons*, 454 N.W.2d at 868 (recognizing that a juror's "mere *reservation* about impartiality" was insufficient to sustain a challenge for cause). Indeed, we have affirmed denials of challenges for cause where jurors have been hesitant about their ability to be fair and impartial. *See, e.g.*, *State v. Boat*, No. 21-0934, 2024 WL 466562, at *5 (Iowa Ct. App. Feb. 7, 2024) (finding no abuse of discretion in

23

the court's denial of a challenge to a juror who admitted that it would be hard for her to set aside her experience as a witness in her ex-husband's murder trial); *Gills*, 2024 WL 3518061, at *5 (affirming denial of a challenge to a juror who "was equivocal about almost everything [but] did not express any opinion as to guilt or bias against" the defendant).  I would do the same here with Walker's challenge to M.W.

*** 

I would also reject Walker's challenge to the district court's refusal to submit his requested imperfect self-defense instruction to the jury,[10] which is reviewed for the correction of errors at law.  *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).  The imperfect self-defense instruction has been rejected by our court in unpublished decisions, which held the defense is inconsistent with Iowa law.  *See State v. Erlbacher*, No. 22-0299, 2023 WL 8447939, at *3 (Iowa Ct. App. Dec. 6, 2023); *State v. Cusic*, No. 16-0323, 2017 WL 1278293, at *3 (Iowa Ct. App. Apr. 5, 2017); *State v. Irving*, No. 14-1479, 2015 WL 5965171, at *6–7 (Iowa Ct. App. Oct. 14, 2015); *State v. Gomez-Rodriguez*, No. 06-0527, 2007 WL 1688987, at *2–3 (Iowa Ct. App. June 13, 2007).  I see no reason to depart from these decisions.

---

[10] The proposed instruction read:

If you find that in the Defendant's mind the danger was actual, real, imminent or unavoidable; however, find that a reasonable person would not have believed there to be such a danger, then the Defendant did not act with malice. . . .